Oral argument not to exceed 15 minutes per side. Mr. Blackwell for the appellant. Your Honor, if I could reserve two minutes for rebuttal. Let me start by what I think is the key to the case. The trial defense that counsel put on back in 2004. At that time in his closing argument, Mr. Jesse said, I firmly believe that Mr. Love was indicted because he was a black male with an Escalade and he had a $35 drug sale when he was 18 years old. Your Honor, when you read the lengthy transcript of that trial and the way the defense was presented, I think that in effect sums up the position that the defense took and what the defense tried to do to convince this jury that Mr. Love was not guilty of the conspiracy. Clearly, the issue recognized by the district court, by defense counsel, even at the evidentiary hearing that we had on the 2255, was an issue of credibility. It was what the entire case was about. It was credibility involving Travis Love, who was the defendant, against the credibility of George Duarte and Eric Serna, who were the two government witnesses that basically constituted 98% of the government's proof during the course of that trial against Mr. Love. But he had the drug ledger. He had the drug ledger. A name that certainly looks a whole lot like it. His ex-girlfriend referenced him in the hearing with that name and it was his business cell phone number. He also had a personal cell phone number that you would expect that if someone were involved in drug trafficking. The problem that I see from the defense perspective, which they obviously tried to work around as best they could, again it seems to me, was you have this physical proof of an apparent connection in a drug ledger. It wasn't that his work phone number was on a business card or you had pen register metadata showing the kind of flow that one normally sees between suppliers and dealers. It's got a ledger and it's got that number. Well, and in order to get to that point and to accept the fact that it was a ledger, again it came down to the credibility of George Duarte. It was his ledger. I've looked at the ledger. It was a crude ledger that simply had names and numbers, which gets to the point that Mr. Love's position at trial was the notations in the ledger, if they related to him, related to legitimate transactions, which involved a concert that Mr. Duarte had invested cash into, and a series of cars that Mr. Duarte and Mr. Cerna had purchased from Mr. Love. Against that, as your Honor has just said, was the government's position that these were cocaine deals. These were multi-cocaine deals. They were evidenced by... As both Cerna and Duarte testified. As they both testified. And I think that's critical because, again, it came down to who do you believe? Do you believe Mr. Duarte and Mr. Cerna and their explanation or do you believe Mr. Love? And my focus today is really on two things I raised in the brief. First, it's the first issue, and that's the failure of the defense to support the testimony of Mr. Love at trial. And then secondly, I'd like to mention before I finish, the Alleyne issue, which may be applicable to this case, depending on ultimately what the Supreme Court decides to do and how far the Supreme Court is willing to take their holding earlier this year. The thing that's important to remember is that the trial of this case occurred back in 2004. That was nine years ago. The evidentiary hearing itself on the 2255 occurred in March of 2012. The district court issues a certificate of appealability on the issue I'm going to talk about, and that's failure to support the defense that Mr. Love testified about. And then this court issued a certificate of appealability also on the failure of the defense lawyers to seek severance from Mr. Delman Davis, who was tried with Mr. Love, the failure of trial counsel to get a handwriting expert pretrial to examine the ledgers that were involved, and the failure of trial counsel to charge the veneer in the eastern district of Tennessee, northeastern division, which historically has no minority members. That isn't really before us now, is it? It wasn't challenged. I'm suggesting what's before the court is ineffective assistance of counsel, those being other issues that this court granted a certificate of appealability on for the court to consider. It's an issue at some point this court ought to consider, but you're right. Factually, it's not here in that sense. And it does seem to me that I do, I'm inclined to agree with the government. The handwriting issue is, there's no there there. I mean, it's just, so what if they, or let me think about it, is the contention is that the handwriting expert may have been in a position, we don't know, because it wasn't part of the hearing, to say that that's neither Duart nor Cerner wrote those records, but that's not part of 2255. Right, right. And part of the problem is that the handwriting expert, which Mr. Love asked for pre-trial, to examine some of the records, that was never done. So we're in a position that we don't know what could have been examined or what that result could have been. I mean, it seems to me that then the burden is on the petitioner in 2255 to bring in a handwriting expert to get the comparative samples and say no. Had, it's my professional judgment, that had this been examined before trial, it would have substantially undercut Duart and Cerner's testimony that it was their handwriting, which would have blown a big hole in everything. But that's not part of the 2255. So my point is, I think the handwriting as presented now is not, you want to talk about the witnesses, why don't you talk about the witnesses. Well, let me finish with that because I do think that the record, and the problem is the handwriting issues that came up that a handwriting expert would have helped came up in the earlier companion trial involving Mr. Music and those defendants. And it was during that time that Mr. Love recognized that Mr. Duarte had testified to certain things that he had written that Mr. Love believed he had not written that could have affected his credibility as a witness in Mr. Love's trial. The problem was Mr. Love went to trial counsel, explained that to them, and they never even contacted a handwriting expert or followed up on that. And I think that is set out in the brief, and that background is in there. Let me kind of go back to the fear to call the witnesses. The thing that really jumps out here that makes credibility even more critical, I think that it was, is that this is what we call a no-dope conspiracy. And let me just say that I was in the U.S. Attorney's Office for 30 years, retired six years ago, tried a number of these cases and from first-hand knowledge know what a normal drug conspiracy case is going to involve. And let me just take a second and tick off what this case does not have. We know it's a cocaine case. That's what the allegation was. There were no recorded sales of cocaine in the sense that they were recorded either video or audio to Mr. Love. There was this unnamed runner that Mr. Duarte and Mr. Cerna talked about that delivered the cocaine, but the government never identified who he was and he didn't testify at trial. There were no sales by Mr. Love to anyone. The government didn't bring in any customers or anybody to say that he was selling cocaine. There were no Travis Love customers even identified. There were no confidential sources. There were no informants. There were no undercover officers. There was no Title III. There were no cell phone records in the sense to establish that Mr. Love was having phone conversations, even on his business or private phone, with any known drug users or drug dealers. There were no surveillances that were conducted. There were no records that Mr. Love sold to anybody or deposited sums of money into his bank account that the government could have alleged were the results of drug transactions. There were no searches that were conducted, particularly at the resident on Hart Avenue, where allegedly all this happened. There were no vehicle searches. There were no forensics involved at all. I understand. Let me ask you a question. And it goes on and on and on. Let's talk about the witnesses. Again, if I understand the case correctly, the district court found that the overall theory that the two lawyers presented was a reasonable theory and that one obviously misfired and didn't work. But let me ask you, is that a finding of fact? And if so, isn't our ability to review that quite constrained? In other words, it seems to me that's a fundamental finding, if it's a finding of fact, that to support or against your contention about the failure to call witnesses. In other words, they had a reasonable theory. We want to stay as far away from those guys as we can. And it would be contrary to that theory to call some or all of these witnesses. Well, I would suggest, Your Honor, that that would be a mixed question of law and fact. And I think it's based on an incorrect premise by the district court in reaching that conclusion. And I suggest that for two reasons. The first reason is that the district court, as did the government, as did the defense at trial, took the position that these witnesses, and we're not talking one or two or three witnesses, we're talking at least 10 to 12 witnesses that would have corroborated different aspects of what actually happened, that in a lot of cases saw what happened or were present when non-hearsay statements were made by Mr. Love. The district court and the trial counsel tried to say, well, we didn't call those because we believed that one or some may have had criminal histories, and that would have negatively affected their credibility. Well, at the time this case went to trial in 2004, none of the prospective defense witnesses that are set out in my briefs that would have supported the transactions that Mr. Love explained to them had any criminal history at all. Did Delman Davis have a criminal history? Delman Davis did. He was the only one that did. He had a pretty significant one. He did. But you can take Delman Davis apart. And I understand the district court's concern with Mr. Davis because he also had a pending 2255 in the district, and I understand that. But put Mr. Davis aside and you look at it. But you really can't. I guess the problem for me is I think we would all agree it's a troubling record. It is troubling for what is not in it. But the problem is the standard here. We have presumed propriety of counsel, and all of us who have tried cases have been in the situation where you thought your witness did such a good job that what you want to do is not mess it up. That's of concern. Is it an appropriate strategy, as the court below found, to say, you know, your witness has testified so well. He's had two other witnesses that are upstanding citizens to testify also. And now the question is, do you put on anybody else to corroborate things, each separate little component with the danger that you ask one question too many or you put in somebody else who has a criminal history and appear to make your defendant, who's done well, look like he was consorting with known drug dealers? I mean, isn't that where we are, that balance that is generally the right of defense counsel to make? It is. But the difference here is, as I said, is that none, except for Mr. Delman Davis, none of these other witnesses had criminal histories. This was a black and white case in the sense that either drugs transactions were occurring in front of them or legitimate business transactions were occurring. The other witnesses, 10 or so, would have been able to substantiate what Mr. Love said to establish the legitimacy of those transactions. But no matter what the extent of their criminal history was, some of what they would be testifying to would be things such as exchanging tens of thousands of dollars inside cereal boxes. Do you not see that as something that defense counsel would have to have considered before putting those people on? Even if they affirmed this is when the money passed hands, the fact that we're passing back and forth huge amounts of cash in things like cereal boxes, is that not a reasonable consideration for a defense counsel to make? It is. But I think at that point in time, that was already in the record, which would increase the need, I would suggest to Your Honor, to put on those witnesses to establish the legitimacy of those transfers. Mr. Love, as I recall, testified that some of those payments were made to him in a cereal box. Now, that's going to create a sense of question, I think, in a jury's mind, unless it can be established by separate witnesses to corroborate what Mr. Love said, that that, in fact, happened as it related to Mr. Duarte or Mr. Cerna purchasing the automobiles. I would also point out to the court, and I think this is important, is that trial counsel, Mr. Jesse, was allowed to sit in the courtroom during the evidentiary hearing, and there was a reason for that. He also was able to review all of these affidavits that were filed closer in time to the trial, through the 2255, that each of these witnesses signed, and Mr. Jesse acknowledged that he and Mr. Street, the other trial counsel, were aware at the time the case went to trial that these witnesses would have testified to these facts and would have supported Mr. Love's defense, and I think that's critical. And, Judge Carter, to get back to your earlier point, the other point I wanted to make that I think the district court made a mistake on was simply in writing off completely these affidavits simply because they weren't notarized. And in the reply brief that I filed with the court, I pointed out that, of course, the 2255 is a civil proceeding, and under the statute, as long as you comply with the statute and have the language that is presented under penalty of perjury, that is as acceptable as an affidavit would be that was notarized. I think we've let you go a good bit over your time. You will have your rebuttal time. I think you did, and I appreciate that. Thank you. Thank you. What is your answer to his contention about the viability of the witnesses, their ability to withstand cross-examination and not cast a shadow over Mr. Love's own testimony and performance? Deborah Brenneman for the United States. I think our best evidence about what value or limited value or lack of value that these witnesses could have offered was provided by petitioner's own testimony during the evidentiary hearing. When he admitted that many of these people who he said had witnessed transactions hadn't actually witnessed transactions. Thinking page ID number 2029 and 30, page ID number 2051 and following. The people who lived at Bowen's house, we've got Bowen's, we've got Davis, we've got Fitz. Defendant did not live there, but the evidence was clear from petitioner's own testimony at trial, at the evidentiary hearing, that he spent a lot of time there. These guys were his friends. He worked with these guys. That's fine, but he had testified at trial that all three or four of these individuals had witnessed the allegedly legitimate transactions with Duarte. And he clarified during the evidentiary hearing that, in fact, they didn't witness the transactions. They didn't hear Duarte say what the money was for. In some occasions, they knew that Duarte was on the property, but their information came from defendant himself. They saw defendant counting money at the table and heard him say that it came from Duarte for a truck. That, in itself, is inadmissible hearsay. It's not direct evidence of Duarte participating in a legitimate transaction with defendant. A panel of this court recently recognized that distinction in the Fofana case. I think that came out about two weeks ago. It talked about someone who overheard a phone call discussing a bribe. Well, alleging that a bribe had been offered was not itself evidence that a bribe had been offered. It's merely an assertion that something had happened. And that's the way most of these witnesses' testimony played out. That's even borne out in the affidavits, if we want to call them that, from 2009. Many of them said, Travis Love told me that he was selling his truck and that he got the money from Duarte. Or, I saw him counting money. He said it was from Duarte. So we submit that there's not—the defendant can't show any value from these witnesses. And if he can't show that these witnesses would have actually aided his case, he can't show either that counsel's performance was deficient by not calling them or that he was prejudiced. I'd submit that the district court made as a factual finding what defense counsel's strategy was and described it as a four-part strategy. This is on page ID 1956, that they were going to stay away from witnesses who had prior drug convictions. They were going to attack the credibility of Sarna and Duarte, the government's primary witnesses. They were going to avoid testimony about suspicious transactions, large exchanges of cash, cereal boxes, especially away from home. And that they were going to call a defendant who was intelligent and articulate and have him explain these legitimate transactions. The district court— Not many defendants in these cases have a job the way he did. If I count correctly, it would have made him about $60,000 that year and apparently had an otherwise pretty good record. And the district court specifically found that defendant was one of the most convincing defendants he had ever heard testify at trial. Doesn't that give you pause that you have a convincing witness, the judge says he's convincing, by all accounts he's convincing, and yet the defense counsel fails to put on anybody to corroborate him? Why is that within the range of reasonableness? I don't think we have any witnesses who can corroborate these facts. Well, they could. Nobody could say, there's Mr. Love and I'm going to say everything he said is correct. And I would agree with you, it would have been a little bit scattershot. But what if he had put on six of those people and the first one had said, transaction A, yes, I was there, and that's what happened. The next one, transaction B, yes, what Mr. Love said, C, D, and E. I don't think we have people for those transactions. Because the people that petitioners said witnessed those transactions, people like Davis and Fitz and Bowens and Harris, for the transactions that happened at Bowens' house, the $45,000 allegedly for the concert promotion, which petitioner had testified came in three installments, 15,000 each, all at Bowens' house. Bowens did testify at trial. He said he'd seen Duarte there once and it involved a truck. If we use these three incidents regarding the $45,000 for the concert promotion, the Navigator purchase, the Escalade purchase, all of those would be at least five occasions when Duarte was at Bowens' house. Bowens went out of his way to say, I'm in charge of the house, nobody gets in if I'm not there, in part to argue that no cocaine had been delivered there, which was not the government's argument in the first place. But none of these guys testified at the evidentiary hearing that they witnessed the transactions or knew them to be legitimate. Davis, Fitz, Harris, Bowens, and petitioner himself said, they knew the money was for the sale of the Navigator  That's not proper evidence that counsel could have presented. It would have been ruled as an admissible hearsay. A defendant can't bolster his testimony by telling his friends what to say and then calling his friends to testify to those facts. And I submit that we don't have any credible evidence that counsel could or should have presented. I agree with Mr. Blackwell, this was not a case with overwhelming evidence. Our best evidence were the drug ledgers with defendant's name and phone number and the testimony of these two cooperating co-defendants. The jury heard all of the evidence. They heard the testimony of Duarte and Cerna. They heard petitioner's very convincing testimony. They heard all of his explanations for why he was actually a legitimate businessman. And the jury rejected those. The district court made factual findings, again at the evidentiary hearing, and presided over trial, also over the evidentiary hearing. And this court has to review those factual findings for clearer. Obviously the conclusion, whether counsel's strategy was reasonable, is a legal question this court can review date over. We submit that defendant has failed to demonstrate ineffectiveness on any of his claims and that the denial of his 2255 motion should be affirmed. Would you concede that we have to view the reasonableness of their defense activities in light of the failure of the government to provide any other evidence regarding the sale of cocaine or presence of cocaine in his home or indicia of being a drug dealer? The reasonableness of counsel's strategy is assessed at the time of trial. So, yes, the evidence as it exists, I know we have an extensive record here, and I'll certainly defer to the court's review of that. What evidence we had, like I said, it's not an overwhelming case. Unless you have further questions, I'll rest on a brief. Thank you for your attention. I'll be brief. I would agree, Your Honor, that it would have been important for trial counsel to have corroborated any aspect of Mr. Love's testimony based on the way this case set up. The witnesses who testified at the evidentiary hearing in 2012, that was almost 10 years after the fact. The allegations were these things occurred in 2003, 2004. So you've got 10 years that it took from the time he was convicted until the time we had the evidentiary hearing. I stand on the record and I stand on what these witnesses said as they're reflected in their affidavits and as reflected in their testimony. They are not totally consistent. They don't overlap each other. But I suggest to the court that that creates a certain indicia of credibility because if they did, then the government would be standing here arguing to Your Honor that these were simply a script that Mr. Love prepared, that Mr. Love told him to testify to, and, you know, they did that. But that's not the case. Your Honor, the record is clear. The other thing that counsel has said that I would take issue with is that it was hearsay what Mr. Love said to him. Well, obviously an exception to the hearsay rule is the res gestae exception. And if you look at these affidavits and the way these transactions occurred, Mr. Harris was present in each one of them. The statement that Mr. Love may or may not have made in each of the transactions occurred as that transaction was occurring. And they were able, the witnesses were able to see what was occurring. They saw transfers of documents occur. They saw Mr. Duarte, in particular, give Mr. Love money, then get in the car and drive off. And my experience, Your Honor, in drug cases has always been that it's the person who is the middle man, like Mr. Love, who would be paying the drug supplier, Mr. Duarte. Instead, we've got a case where the flow of money is just the opposite way, which I suggest to the court the witnesses could have cooperated and would have supported the testimony of Mr. Love and would have created a reasonable possibility that this jury would have found him not guilty. I realize I'm out of time. I would simply ask the court to consider the argument I made under Rule 28J on the allying issue. The record is clear in this case that the district court did not submit the question of whether Mr. Love had the qualifying conviction that ultimately enhanced his sentence, resulting in 240 months. Under Almendiz-Torres, that remains barely the law that the judge can do that. Right. Is that not correct? I understand, Your Honor, but I've got a client who was really involved in this whole process all the way through, and I agreed with him that this was an issue we would raise that way. And I thank you for your time and the extra time. Thank you. There's no need to call the brief cases.